**Nell Brown**
**Mark Ahlemeyer**
**Assistant Federal Public Defenders**
**101 SW Main Street, Suite 1700**
**Portland, Oregon  97204**
**Tel:    (503) 326-2123**
**Fax:    (503) 326-5524**
**Email: nell_brown@fd.org**
**Attorneys for Petitioner**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **FRANK E. GABLE,** | | **Case No. 3:07-cv-00413-AC** |
| | **Petitioner,** | **REPLY TO RESPONSE TO MOTION FOR ORDER REGARDING DNA TESTING** |
| **v.** | | |
| **MAX WILLIAMS,** | | **IN THE ALTERNATIVE, ORAL ARGUMENT REQUESTED** |
| | **Respondent.** | |

_____

I.      **Introduction.**

Petitioner is not requesting "repeat" or "re-testing" of the overcoat, glasses and scarf as the State suggests in its response, CR 132 at 2, 5.  The requested testing, as proposed by Criminalist Alan Keel, is new, additional testing that has never previously been conducted.  While the items were previously submitted to Keel for DNA testing in 2000-01, the areas now sought to be tested are new.  The previous testing was done on blood stains on the victim's clothing and eyeglasses, and that testing revealed that the stains were of the victim's blood.  The testing now being requested is of areas where there are no bloodstains, but where so-called "touch DNA" would have been

**Page 1 – Reply to Response To Motion For Order Regarding DNA Testing**

transferred when the assailant came into contact with the victim, including around the stab cuts in the victim's coat, the area of his glasses that may have been punched, and areas of his scarf that likely came into contact with the assailant.[1]

Advances in the sensitivity of DNA testing mean that more information can be obtained today from smaller samples than could be gleaned from larger samples in 2000-01. Indeed, the State "does not dispute that there are testing methods and kits available now, which were not available during Petitioner's underlying trial in 1991, or during state post-conviction proceedings in the early 2000s." CR 132 at 5.

"Good cause" has been shown because the testing requested involves new areas to be tested based on new, advanced science, and there is a likelihood that the generation of a DNA profile from the requested testing could further Petitioner's innocence claim by identifying the true assailant. Petitioner originally requested oral argument, but, upon review of the State's Response,

---

[1] The State states that it has agreed to mitochondrial DNA testing of three hairs "primarily" because they were never tested before. However, one of those hairs was not only DNA tested previously, it was discovered on the victim's pants for the first time eleven years after the murder by Alan Keel. CR 131 (Exhibit A, filed under seal, hereinafter referred to as "Exhibit A"), at 8. Keel attempted nuclear DNA testing, but was unable to develop a DNA profile from the root of that hair, and, therefore, recommended mitochondrial DNA testing of the hair's shaft. *Id.* at 8, 15. That recommendation for mitochondrial DNA testing was never followed.

There is no principled distinction to be drawn between doing the agreed-upon additional testing on the shaft of that hair, and doing the additional requested touch DNA testing on the three items of clothing. Both will involve different testing on a different part of the same item that Keel tested in 2001.

Moreover, despite the State's contrary argument, which is based entirely on the state-of-the-art as reflected in the 2001 report, there is the potential for far more to be gleaned from testing the overcoat, eyeglasses, and scarf than from mitochondrial DNA testing of the three hairs. Mitochondrial DNA testing can only establish a link to a female blood line and, essentially, requires comparison to known samples. In contrast, a DNA profile established by the requested nuclear DNA testing could be matched to an offender in the national DNA database (CODIS or Combined DNA Index System). The State's agreement to limited testing of hairs with unknown connection to the crime is not a reason to deny the requested nuclear DNA testing.

**Page 2 – Reply to Response To Motion For Order Regarding DNA Testing**

urges the Court to grant Petitioner's request for DNA testing and issue an order for testing without oral argument. In the alternative, if the Court has concerns or questions or believes the written submissions do not establish "good cause," Petitioner requests oral argument.

## II. Advances In DNA Science Have Rendered Blake's Skeptical Statements In The 2001 Report Obsolete.

The State places a great deal of emphasis on language in the 2001 report attributed to Ed Blake. *E.g.*, CR 132 at 3-4, 5. First, it should be noted that Blake and Alan Keel did the DNA testing work together in 2000-01. Specifically, Keel did the sample selection and conducted the actual laboratory testing. Keel then provided his laboratory notes and work product to Blake, who wrote the final report, which Blake and Keel co-signed. *See* Exhibit A. Thus, contrary to the State's contention on the last page of its submission, "the scientist who conducted the testing"—Alan Keel—is explicitly stating that new, additional testing of the overcoat, glasses and scarf could be done based on differences in sampling methods and advances in the sensitivity of DNA testing.

Moreover, the language in the 2001 report upon which the State relies for its skepticism about the likelihood of finding biological material on the victim's clothing has since been proven incorrect by advances in science. As Alan Keel explained to undersigned counsel upon reviewing the State's Response, the type of testing Petitioner now requests may have been akin to "looking for the proverbial needle in a haystack" sixteen years ago, but, due to advances in sensitivity of DNA testing discussed in Petitioner's motion, the requested testing is now routine and produces results. In other words, what Blake referred to as needles in a haystack are now routinely discovered through nuclear DNA testing using the sampling methods and kits that Keel explains never were used in this case, but now could be. Indeed, the State concedes that there have been

**Page 3 – Reply to Response To Motion For Order Regarding DNA Testing**

advances in DNA testing, CR 132 at 5, even as it focuses on Blake's outdated comments, which were based on the science available in 2001.

The State's position that Keel's opinion today has not "undermined" Blake's 2001 opinion about "the unlikelihood of finding DNA of the assailant on the items in question" should be rejected. Keel's opinion today is based on advances in science that were not known to Blake when he wrote the 2001 report. DNA science itself undermines Blake's 2001 statements. Keel, who did the 2001 testing in this case, now has opined that additional testing could be done by sampling areas that, due to available science at the time, he did not sample in 2000-01, and by using new, more sensitive testing kits that were not available to him in 2000-01.

The State also relies on language it attributes to Blake to argue that the "probative value" of any DNA discovery could be minimal because the DNA could have been deposited by innocent means. Of course, until the testing is conducted, we cannot know whether a DNA profile will be established, and, depending on the results, the parties will be free to argue about the probative value of the information obtained.

### III.    Petitioner Seeks DNA Testing To Establish The True Culprit, Not Merely To Show The Absence Of His DNA.

Despite the State's suggestion (CR 126 at 5-6), Petitioner is not simply asking for testing to show the absence of his own DNA. The new testing is requested because it could reveal biological evidence from someone else – the true assailant. Thus, the cases cited at the top of page 6 of the State's response are inapposite.

### IV.    Petitioner Has Shown Good Cause.

Petitioner's request is narrow. He requests testing of three items. The request is specific. He requests that Alan Keel be permitted to survey and sample the three items for genetic material

**Page 4 – Reply to Response To Motion For Order Regarding DNA Testing**

in specific new areas, including, in particular, from: around the cut marks to the overcoat; the area of the eyeglasses where, if the victim was punched as other suspect John Crouse confessed he punched the victim, DNA from that contact could be found; areas of the scarf that could have come into contact with the assailant; and one area of the scarf where previous testing revealed a minor contributor about whom more information could be gained today.  The request is made to establish third-party guilt.  While the State presented each of the three items to the jury at trial, the State was unable to link them in any way to Petitioner.  Petitioner's ability to establish his innocence now should not be prejudiced by the fact that the State could not tie these three pieces of physical evidence to him at trial.  The fact that the State did not use physical evidence to convict Petitioner does not mean that Petitioner should not be allowed to use physical evidence to show someone else committed the murder.  Petitioner's position is, and has been for twenty-seven years, that he did not commit this murder.  DNA testing could establish who did.  Although the State has not addressed it, the victim's family would like the requested testing completed and the Court can and should consider the family's wishes.  CR 128.

The two cases cited by the State on page 5 of its response (*Donald* and *Stouffer*) are inapposite.  In each case, because of other powerful evidence of guilt in the case, the requested testing could not exonerate the petitioner nor further any claim.  For example, the petitioner in *Donald* requested additional DNA testing of a sample from the victim's underpants that the initial DNA testing linked to him at a frequency of 1 in 7,800 African-Americans because he wanted to establish that a relative had committed the crime.  The appellate court affirmed the denial of discovery because there was overwhelming evidence of Donald's guilt in addition to the DNA evidence that could not be explained away by the retesting, and because no evidence supported his "speculative and baseless" theory that a relative committed the crime.  *Donald v. Spencer*, 656

**Page 5 – Reply to Response To Motion For Order Regarding DNA Testing**

F.3d 14 (1st Cir. 2011).   In *Stouffer v. Reynolds*, the Tenth Circuit affirmed the denial of a discovery request because serological testing already matched blood on the petitioner's jacket to the victim, and because the petitioner made no "connection between [the requested] DNA [testing] evidence and a claim of actual innocence."   168 F.3d 1155 (10th Cir. 1999).   Neither case supports denying Petitioner's discovery request here.

The State also relies on two cases (*Toney v. Gammon* and *Jones v. Wood*) where discovery was allowed, and argues that Petitioner's requests are unlike the requests for discovery in those cases.   This position is incorrect.   The State appears to suggest that those cases involved items that had not been DNA tested *at all*.   However, both cases turned on whether the testing could produce information relevant to the petitioner's claims, and whether the items had previously been tested was not material to either decision.   In fact, *Jones* does not even indicate whether the items had been previously tested.   In *Toney v. Gammon*, the Eighth Circuit reversed a district court's decision to deny a habeas petitioner access to evidence for DNA testing, finding the lower court had abused its discretion, and that there was "good cause" for discovery because the petitioner had always maintained his innocence and the testing could prove the prejudice prong of his *Strickland* claim that his attorney had failed to pursue his claim of mistaken identity.   79 F.3d 693, 700 (8th Cir. 1996).   In *Jones v. Wood*, the Ninth Circuit quoted heavily from *Toney*, and reversed the district court's grant of summary judgment before allowing the petitioner's request for discovery, finding "good cause" existed because the testing was necessary to show his attorney had been ineffective. 114 F.3d 1002, 1009-1010 (9th Cir. 1997).   Both decisions support a finding of "good cause" here.

In any event, the State is incorrect that the items have already been tested.   The blood stains on the items were tested and the testing showed the blood was the victim's blood.   Petitioner now requests testing of areas that are likely to contain "touch DNA" from the assailant.

**Page 6 – Reply to Response To Motion For Order Regarding DNA Testing**

**V.      Conclusion.**

For the reasons stated in Petitioner's Motion for an Order regarding DNA testing (CR 126) and herein, "good cause" has been shown for the requested order for DNA testing.  If the Court has concerns or questions or believes the written submissions do not establish "good cause," Petitioner requests oral argument.

Respectfully submitted on May 3, 2016.

/s/ *Nell Brown*
Nell Brown

/s/ *Mark Ahlemeyer*
Mark Ahlemeyer
Attorneys for Petitioner